

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | | |
|---|---|---|
| MICHAEL CONE, On Behalf of Himself and All Others Similarly Situated, | § § § | |
| Plaintiff, | § § § | |
| | § | Civil Action No.:3:04-CV-1191-B |
| | § | |
| DEKRA EMISSION CHECK INC., | § § | |
| Defendant. | § § | |

## JOINT MOTION FOR ORDER APPROVING COLLECTIVE ACTION SETTLEMENT AND APPROVING NOTICE OF SETTLEMENT AND OPPORTUNITY TO CHALLENGE COMPUTATIONS OF SETTLEMENT SHARE

The named Plaintiff Michael Cone, on Behalf of Himself and Others Similarly Situated ("Plaintiffs"), and Defendant DEKRA Emission Check, Inc., file this Joint Motion for Order Approving Collective Action Settlement and Approving Notice of Settlement and Opportunity to Challenge Computations of Settlement Share; and would show the court as follows:

### I.
### Introduction

In this Fair Labor Standards Act (FLSA) collective action, the Plaintiffs and Defendant jointly request that the court enter a stipulated order approving the settlement reached between the parties and approving the notice to be sent to the putative class members informing them of their rights to participate in the settlement.

The parties have carefully and exhaustively negotiated a settlement in this action. They have agreed to resolve the disputed factual and legal issues on terms set forth in the settlement agreement attached to the proposed Order (the "Agreement") See Exhibit 1. Pursuant to the Agreement, the parties seek approval of the settlement and authorization to distribute the attached notice and consent to join forms.

The parties believe that a brief hearing before the Court may be appropriate (but is not required), to allow counsel for the parties to present the Agreement to the Court and to respond to any questions. As the Eleventh Circuit Court of Appeals explained in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982), in the "context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations," the parties must present any proposed settlement to the district court, which "may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.* at 1353. *See also Boone v. City of Suffolk, Va.*, 79 F. Supp.2d 603, 605 (E.D. Va. 1999) (FLSA overtime settlement must be overseen by the Department of Labor or approved for fairness and reasonableness by a district court).

The parties request that this court review this settlement under the procedures and standards set forth in *Lynn's Food Stores, Inc., v. United States*, 679 F.2d 1350 (11th Cir. 1982). The Court will find, after scrutinizing the settlement, that the agreement is fair and should be approved. The settlement agreement reflects a reasonable compromise of issues actually in dispute, the settlement was reached in an adversarial context in which the Plaintiff and class were represented by competent and experienced counsel, and the totality of the proposed settlement is fair and reasonable.

## II.
## Procedural History

Plaintiff Michael Cone filed this collective action on behalf of himself and others similarly situated on May 4, 2004 alleging that Defendant violated the FLSA. Plaintiff subsequently amended his Complaint and filed a second amended complaint in this Court on or about September 16, 2004. Plaintiff claimed that he and other inspectors working for the Defendant were denied overtime owed to them because they were not paid for all hours worked and because they were not paid at the correct overtime rate of pay since commissions earned were not included when

calculating their overtime rate of pay. In addition, Plaintiff claims that Defendant violated the FLSA by artificially depressing inspector's regular rate of pay by reducing the commission payment in direct proportion to the amount of overtime premium owed to each inspector.

Defendant answered Plaintiff's complaint, denying each of the above allegations. Defendant asserted fifteen affirmative defenses, among them that Defendant acted in good faith and never acted in willful disregard of any applicable FLSA requirements. Defendant continues to deny any wrongdoing whatsoever and does not admit to any violation of law, statute, or regulation.

## A. Summary of Settlement Terms

The Agreement establishes the following opt-in class under 29 U.S.C. § 216(b):

> All of the lane managers, station managers, or inspectors, regardless of precise title, working for DEKRA Emission Check, Inc. from January 17, 2003 until March 14, 2005.

Each member of the opt-in class will receive a notice letter. See, Exhibit 2 to attached Settlement Agreement. The notice letter contains a description of the settlement and informs members of the settlement class how to participate in the settlement if they so choose. Along with the notice letter, each opt-in class member will receive a consent to join form, which contains a general release and covenant not to sue. See, Exhibit 1 to attached Settlement Agreement. In order to participate in the settlement, any opt-in class member must have postmarked an executed consent to join form within thirty (30) days of the date of mailing of the notice letters. A pre-addressed and stamped envelope will be provided to all putative opt-in class members for this purpose. An independent third party will administer this process.

Each opt-in member will be entitled to damages depending on two factors. The first factor is based on how many others opt-in to the settlement. The second factor depends on how many full weeks each opt-in member worked for Defendant during the Relevant Time Period. The damages

will be apportioned from a common fund based on length of employment. Plaintiffs and Defendant agreed to a common fund of $37,857.14.

The settlement agreement also provides for the payment of $15,142.86 to named Plaintiff, Michael Cone, and each opt-in Plaintiff, which was divided in the following manner:

- Michael Cone: $3,028.57
- Jason Thomas: $4,240.00
- David Hunter: $3,482.86
- Chris Reed: $1,060.00
- Mike Kutz: $1,060.00
- Ashley Reed: $2,271.43

It also provides for payment of $40,000 in fees to class counsel and reimbursement of $7,000 in actual and anticipated costs.

## III.
### The Court Should Approve the Settlement Agreement and Notice.

This court should approve the settlement agreement and notice because the settlement was achieved in an adversarial context, the Plaintiffs and the class are represented by competent and experienced counsel and the settlement agreement reflects a reasonable compromise over disputed issues. Moreover, the settlement provisions are fair. Specifically, the common fund and fee agreement are fair and reasonable.

### A. The Standard for Approval.

An FLSA claim, except in two circumstances, cannot be waived or settled. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706 (1945). The exceptions are 1) that the Secretary of Labor can supervise the payment of back wages or 2) that the employer and employee present the proposed settlement to the district court for approval. 29 U.S.C. § 215(b); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). Both parties request this court to approve the attached settlement agreement, notice, and consent to join form. See, Exhibits 1, 2 and 3. A

district court, when reviewing a proposed settlement of an FLSA claim must "scrutinize the settlement for fairness" and decide whether the proposed settlement is a "fair and reasonable resolution of a <u>bona fide</u> dispute over FLSA provisions." *Id.* at 1353, 1355. The *Lynn's Food Stores* court essentially established four factors for a district court to examine to determine whether to approve a FLSA Settlement:

1. Was the settlement achieved in an adversarial context?

2. Were the Plaintiffs represented by attorneys who can protect their rights?

3. Does the settlement reflect a reasonable compromise over issues that are actually in dispute?

4. Is the settlement fair?

Id. at 1353-54.

In addition, the notice sent to the putative class members should be reviewed and approved by a court to prevent "misleading communications." *Hoffman-Laroche v. Sperling*, 493 U.S. 165, 172 (1989). The Supreme Court requires that the notice be accurate so that the putative class "can make informed decisions about whether to participate." *Id.* at 170.

The Declaration of Jeremi Young in support of this motion"(Young Decl."), attached as Exhibit 4 hereto, reveals that the settlement was negotiated at arm's length by experienced counsel concerning <u>bona fide</u> disputes between their clients with respect to liability and the amount due under the FLSA. Furthermore, the Declaration establishes that, in counsel's extensive experience, the settlement is fair, just, and adequate to settle the plaintiffs' and class members' claims. Moreover, the district court is authorized to facilitate notice and the distribution of opt-in forms under section 216(b). *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 168-69 (1989); *Dybach v. State of Fla.*, 942 F.2d 1562,, 1567-68 (11th Cir. 1991); *Belcher v. Shoney's, Inc.*, 927 F. Supp. 249

(M.D. Tenn. 1996). These notices procedures under Section 216(b) merely permit potential plaintiffs to participate in the litigation and/or settlement by opting-in, and do not bind absent class members to the outcome of the case as in class action proceedings pursuant to Rule 23. *See* Kearns, The Fair Labor Standards Act (BNA 2004)

## IV.
## Conclusion

The parties believe that the settlement reached was a fair and reasonable compromise of the respective positions of both sides. The parties therefore respectfully request the Court approve the settlement and enter the Proposed Order. Entry of the Proposed Order will "secure the just, speedy and inexpensive determination" of this action. Fed.R.Civ.P.1.

Respectfully submitted,

**RASANSKY LAW FIRM**

*Jeremi Young* By Permission

JEREMI K. YOUNG
Texas Bar No. 24013793
JEFFREY H. RASANSKY
Texas Bar No. 16551150
JESSICA M. DEAN
Texas Bar No. 24040777

2525 McKinnon, Suite 725
Dallas, TX 75201
(214) 651-6100 (Telephone)
(214) 651-6150 (Facsimile)

**ATTORNEYS FOR PLAINTIFFS**

LITTLER MENDELSON, P.C.

_____

ROBERT F. FRIEDMAN
Attorney in Charge
State Bar No. 24007207

2001 Ross Avenue, Suite 2600
Dallas, TX 75201
(214) 880-8100 (Telephone)
(214) 880-0181 (Facsimile)

**ATTORNEYS FOR DEFENDANT**

Dallas:144359.2 048288.1002

**JOINT MOTION FOR ORDER APPROVING COLLECTIVE
ACTION SETTLEMENT AND APPROVING NOTICE OF SETTLEMENT
AND OPPORTUNITY TO CHALLENGE COMPUTATIONS OF SETTLEMENT SHARE**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL CONE, On Behalf of Himself and All Others Similarly Situated, | § § § § | |
| Plaintiff, | § § | CIVIL ACTION NO.   3-04CV-1191B |
| v. | § § | |
| DEKRA EMISSION CHECK, INC., | § § § | |
| Defendant. | § | |

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into between, on the one hand, plaintiff Michael Cone, and opt-in plaintiffs Jason Thomas, Michael Kutz, David Hunter, Josiah Reed, and Ashley Reed (the "Named Plaintiffs") on behalf of themselves and all other current or former employees who were employed by DEKRA Emission Check, Inc. as Lane Managers and/or Managers and/or Inspectors, without regard to precise title, in stores located within the United States, from January 17, 2003 to March 14, 2005 (the "Relevant Time Period") and who timely file a Consent to Join Form as set forth in Attachment 1 ("Qualified Claimants") and DEKRA Emission Check, Inc., its attorneys, and past, present, and future divisions, affiliates, predecessors, successors, shareholders, officers, directors, employees, agents, trustees, representatives, administrators, fiduciaries, assigns, subrogees, executors, partners, parents, subsidiaries and privies ("DEKRA"), subject to Court approval.

DEKRA and the Named Plaintiffs (collectively the "Settling Parties") do hereby agree to do all things and procedures necessary and appropriate to obtain approval of this Agreement in consideration for: (a) payment by DEKRA of the consideration expressed herein subject to the

terms, conditions and limitations of this Agreement; (b) the release and dismissal with prejudice of all claims of failure to pay overtime compensation and off-the-clock work for work performed as a Lane Manager and/or Station Manager and/or Inspector by the Named Plaintiffs and Qualified Claimants as set forth in Sections VI and VII; and (c) other valuable monetary and nonmonetary consideration as set forth herein.

## I.   CONSENT TO COURT FACILITATED NOTICE

A.    For settlement purposes only, the Settling Parties agree that "Potential Opt In Plaintiffs" are defined as: "All individuals employed as: (1) Lane Managers and/or Station Managers and/or Inspectors, without regard to precise title, in any DEKRA store located in the United States, on or after January 17, 2003 until the present." For settling purposes only, the parties further agree that the Named Plaintiffs and the Potential Opt In Plaintiffs are similarly situated for purposes of 29 U.S.C. § 216(b) and consent to Court facilitated notice to the Potential Opt In Plaintiffs.

B.    This Agreement is contingent upon approval by the Court and is entered into voluntarily by the Settling Parties for settlement purposes only.  DEKRA does not waive, and instead expressly reserves, its rights to challenge the propriety of whether similarly situated Lane Managers and/or Station Managers and/or Inspectors exist and whether they should be provided with Court facilitated notice pursuant to 29 U.S.C. § 216(b) should the Court not approve this Agreement.

C.    The Settling Parties shall cooperate and present to the Court for its consideration in connection with the approval of the Settlement Agreement and Court facilitated notice competent evidence as may be requested by the Court under the appropriate standards for approving FLSA settlements and/or facilitated notice.

D.      The Settling Parties agree that Settlement Services, Inc. shall serve as Claims Administrator for this case unless the Plaintiffs' Counsel and DEKRA agree to a different Claims Administrator.

E.      Neither the Named Plaintiffs nor Plaintiffs' Counsel shall distribute any press release, make any statements to the press, or hold any press conference related in any way to the Settlement.  Notwithstanding the above, the Named Plaintiffs and Class Counsel may (1) in response to questions from Potential Opt In Plaintiffs, or their counsel; (2) as required by law; or (3) as permitted under the terms of this Agreement, comment regarding the specific terms of this Agreement.  Class Counsel shall not place anything on their websites, promotional materials and/or resumes related to the Settlement.

## II.    **SETTLEMENT APPROVAL PROCEDURE**

This Agreement will become final and effective upon occurrence of all of the following events:

A.      Execution of the Agreement by the Settling Parties and their respective counsel of record.

B.      DEKRA's verification in writing of the inclusive dates of employment of each Potential Opt In Plaintiff during the period from January 17, 2003 to the present.

C.      Submission of this Agreement to the Court for approval.

D.      Entry of an Order by the Court granting approval of this Agreement.

E.      Court approval of the Notice set forth in Attachment 2 advising Potential Opt In Plaintiffs of material terms and provisions of this Agreement, the procedure for filing Consent to Join Forms, and their rights with respect thereto and the Consent to Join Form.

F.    Written verification by the Court-approved Claims Administrator that the Notice to Potential Opt In Plaintiffs has been disseminated in accordance with the Court's Order. The Notice to Potential Opt In Plaintiffs will be mailed by first-class mail to the most recent address known or reasonably determinable for each Potential Opt In Plaintiff within twenty (20) days after approval of the settlement or on May 1, 2005, whichever is later.   The Claims Administrator shall promptly attempt to locate, using a computer and/or other search using the Social Security number of the individual involved, any such Potential Opt In Plaintiff for whom any mailed notice is returned as undeliverable.

### III.    EFFECT OF NONAPPROVAL

In the event that any of the conditions specified in Section II of this Agreement are not satisfied, or in the event that this Agreement does not obtain approval of the Court for any reason, all matters covered by this Agreement, including, but not limited to, the stipulation that Potential Opt In Plaintiffs are similarly situated to the Named Plaintiffs under 29 U.S.C. § 216(b), this Agreement and the releases contained herein shall be null and void.  In such event, nothing in this Agreement shall be used or construed by or against any party as a determination, admission, or concession of any issue of law or fact in the litigation; and the Settling Parties do not waive, and instead expressly reserve, their respective rights with respect to the prosecution and defense of the litigation as if this Agreement never existed.

### IV.    MODE, CALCULATION AND TIMING OF PAYMENT OF CLAIMS

#### A.    Notice of Claims and Challenge Procedure

Within thirty (30) days of Court approval of this Agreement or on June 1, 2005, whichever is later, the Claims Administrator shall mail the Consent to Join Form, Notice and Computation of Share and Challenge Form, attached as Attachments 1, 2, and 3, to the last known address, according to DEKRA's records, of each Potential Opt In Plaintiff.  If any such

notice is returned as undeliverable, the Claims Administrator shall promptly attempt to locate the person involved using a computer and/or other search using the Social Security number and/or former address of that person. Each Notice that the Claims Administrator sends or causes to be sent to a Potential Opt In Plaintiff will provide the number of complete weeks the Potential Opt In Plaintiff was employed as a Lane Manager and/or Station Manager and/or Inspector during the Relevant Time Period based on information contained in DEKRA's payroll records; and the formula for determining that person's share of the settlement. Potential Opt In Plaintiffs will be informed that in order to receive a share of the settlement proceeds they must mail a Consent to Join Form to the Claims Administrator so that it is postmarked on or before thirty (30) days of the date the first notice was mailed to the Potential Opt In Plaintiffs' last known address. Potential Opt In Plaintiffs who timely return a Consent to Join Form and who worked as a Lane Manager and/or Station Manager and/or Inspector during the Relevant Time Period will be considered Qualified Claimants entitled to a monetary payment as set forth in Section IV.C., below.

**B.**     **Disputed Claims**

If a Potential Opt In Plaintiff believes in good faith that the number of complete weeks that he or she worked as a Lane Manager and/or Station Manager and/or Inspector during the Relevant Time Period in any DEKRA store located anywhere in the United States as stated in the Computation of Share and Challenge Form are incorrect, that person may return the Computation of Share and Challenge Form to the Claims Administrator, stating on that form the dates he or she believes are correct and authorizing the Claims Administrator to review his or her DEKRA personnel files to determine such information. Any such claim challenge must be postmarked on or before thirty (30) days from the date of the initial mailing to the last known address of the Potential Opt In Plaintiff. Upon timely receipt of any such claim challenge, the Claims Administrator, in consultation with counsel for the Settling Parties, will review the pertinent personnel records showing the dates the individual involved was employed as a Lane Manager and/or Station Manager and/or Inspector which personnel records DEKRA has agreed to make

available for this purpose. After consulting with counsel for the Settling Parties, the Claims Administrator shall compute the number of complete weeks worked to be used in computing the individual's settlement share. In the event there is a dispute between the dates an individual claims he or she was a Lane Manager and/or Station Manager and/or Inspector and the dates indicated by DEKRA's pertinent records, the information in DEKRA's records will control. The Claims Administrator's decision as to dates of employment as a Lane Manager and/or Station Manager and/or Inspector shall be final and unappealable. The Claims Administrator shall send written notice of its decision on any such claim challenge to the claimant and to counsel for the Settling Parties. Claim challenges received after the date set forth in Section IV.B. are conclusively untimely and invalid. The Claims Administrator shall send written notice of rejection to any such challenge. After processing and determining the validity of all claim challenges, the Claims Administrator shall provide DEKRA and Plaintiffs' Counsel with the final list of all Qualified Claimants and the number of weeks worked as a Lane Manager and/or Station Manager and/or Inspector during the Relevant Time Period.

C.    **DEKRA's Payment Obligations**

1.    Within forty (40) days of approval of this Agreement by the District Court, DEKRA shall place One Hundred Thousand and No/100 Dollars ($100,000.00) into a Settlement Fund to be administered by DEKRA (the "Maximum Settlement Fund"). This Maximum Settlement Fund shall be used:

(a)    to pay the Named Plaintiffs a total amount of Fifteen Thousand One Hundred Forty-Two and 82/100 Dollars ($15,142.82) in accordance with the provisions of this section;

(b)    to pay Qualified Claimants their share of Thirty-Seven Thousand Eight Hundred Fifty-Seven and 14/100 Dollars ($37,857.14) ("Claimant Fund") (The Named Plaintiffs shall not share in the Claimant Fund and shall not receive and/or be entitled to any other award besides that which is specified in Section IV.C1(a) above and Section IV.C.2 below);

(c)     to pay the Employer's share of FICA, Medicare, and any relevant state taxes for the payments to be made pursuant to this Agreement to the Named Plaintiffs and Qualified Claimants;

(d)     to pay Seven Thousand Dollars ($7,000.00) in costs to Plaintiffs' attorneys. This payment includes all costs incurred by Plaintiff during the pendency of this litigation up to the date that the Court dismisses this action with prejudice, and one-half (1/2) of the costs incurred by the Claims Administrator for providing notice to Potential Opt-Ins, for administering the claims process, and for supervising the payment of claims under this Agreement.

(e)     to pay Forty Thousand Dollars ($40,000.00), which represents forty percent (40%) contingency fee to Plaintiffs' Counsel for all attorneys' fees incurred in representing the Named Plaintiffs and Qualified Claimants in this matter from its investigation through court approval and the administration of the Agreement. This payment includes all costs of providing legal advice to Potential Opt Ins regarding the terms of the Settlement and the release of claims contained therein, for answering questions from Potential Opt Ins, and for providing representation to the plaintiffs and opt in plaintiffs in this action.

2.     Within fifteen (15) days of submission of the final Qualified Claimants list to DEKRA and Plaintiffs' counsel, DEKRA shall pay Plaintiff Cone Three Thousand Twenty-Eight Dollars and Fifty-Seven Cents ($3,028.57), Plaintiff Thomas Four Thousand Two Hundred Forty Dollars ($4,240.00), Plaintiff Hunter Three Thousand Four Hundred Eighty-Two Dollars and Eighty-Six Cents ($4,482.86), Plaintiff Chris Reed One Thousand Sixty Dollars ($1,060.00), Plaintiff Kutz One Thousand Sixty Dollars ($1,060.00), and Plaintiff Ashley Reed Two Thousand Two Hundred Seventy-One Dollars and Forty-Three Cents ($2,271.43), minus appropriate federal income tax, FICA and Medicare withholding on one-half (1/2) of the settlement amounts (with the remaining one-half (1/2) designated as liquidated damages) for releasing any and all claims under any theory of law, contract, statute, or regulation that they

have or may have had that predate this Agreement, including, but not limited to, alleged claims of failure to pay overtime and off-the-clock work and retaliation claims under the FLSA and the Texas Payday Law. DEKRA shall pay its share of any FICA and Medicare payments from the Settlement Fund.

3.      Within fifteen (15) days of submission of the final Qualified Claimants list to DEKRA and Plaintiffs' Counsel, the Claims Administrator shall mail a check which will be provided by DEKRA, to each Qualified Claimant in an amount equal to their share of the Qualified Claimant Fund after the payments for the expenses of the employer's share of FICA, Medicare, and relevant state taxes, and any expenses of the fund are deducted from the Claimant Fund. Each Qualified Claimant's share of the Claimant Fund shall be derived pursuant to the following formula:

      (a)      Each Qualified Claimant shall receive a prorated share of the Claimant Fund based on the number of weeks the Qualified Claimant worked as a Lane Manager and/or Station Manager and/or Inspector during the Relevant Time Period divided by the total number of weeks worked by all Qualified Claimants times the Claimant Fund.

4.      Appropriate state and/or federal income tax, FICA and Medicare withholding for each Qualified Claimant and Named Plaintiff shall be withheld from one-half (1/2) each claimant's award check with the remaining one-half (1/2) designated as liquidated damages. DEKRA shall pay the employer share of such FICA, Medicare and any relevant state tax payments from the Claimant Fund. DEKRA shall also be responsible for transferring such funds and for providing each taxing authority with appropriate notice of the state and federal withholding amounts and for providing the Qualified Claimants with a W-2, 1099 forms and/or other appropriate state or federal notice regarding the withholdings done pursuant to this Section, and/or filing any tax returns required for the Settlement Fund.

5.      The Claims Administrator shall distribute the monetary payments to Qualified Claimants by mailing the checks, which will be provided by DEKRA, by first-class mail to each

Qualified Claimant.  If any such mailing is returned as undeliverable, the Claims Administrator shall promptly attempt to locate the Qualified Claimant, using a computer and/or other search using the Social Security number of the individual involved.  Any settlement check that remains undeliverable or is not cashed after one hundred eighty (180) days following its issuance shall be cancelled and voided, and the aggregate amount of such cancelled and voided checks minus any expenses, administrative costs, and tax obligations of the Settlement Fund, shall be returned to DEKRA.

## V.    ACCOUNTING AND FINAL REPORT TO THE COURT

Within six (6) months of the date this Agreement is approved by the district court, or at such other later date as the Court may set, the Claims Administrator shall prepare a report, which Plaintiffs' Counsel shall file with the Court, certifying all required payments have been made to Qualified Claimants and to the Named Plaintiffs.

## VI.    RELEASE BY NAMED PLAINTIFFS

In exchange for the considerations recited in this Agreement, each Named Plaintiff does hereby and forever release, acquit, discharge and covenant not to sue DEKRA, which includes its attorneys and past, present and future divisions, affiliates, predecessor, successors, shareholders, officers, directors, employees, agents, trustees, representatives, administrators, fiduciaries, assigns, subrogees, executors, partners, parents, subsidiaries, and privies for any and all actions, causes of action, suits, claims, liens, demands, damages, controversies and liabilities of any kind whatsoever (based upon any legal or equitable theory, whether contractual, common law, statutory, federal, state or otherwise) whether known or unknown, suspected, anticipated or unanticipated, which they have, ever had, or hereafter may claim to have, against DEKRA for all claims that predate the date Cone, Thomas, Hunter, Chris Reed, Kutz, and Ashley Reed sign this Settlement Agreement, including but not limited to those claims that were alleged, could have been alleged, or may be based in whole or in part upon, or do or may arise out of, or are or may

be related to or in any way connected with the claims, actions or causes of action which were alleged or stated, or the facts, matters, transactions, or occurrences referred to in the civil complaint filed with the Court as a collective action entitled, *Cone v. DEKRA Emission Check, Inc.,* in the United States District Court for the Northern District of Texas. This release also includes but is not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Civil Rights Act of 1991, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, 42 U.S.C. § 1981, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Texas Commission on Human Rights Act, and all other local, state or federal laws relating to discrimination, wage and hour, compensation, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, common law retaliation, promissory estoppel, fraud, fraudulent misrepresentation or concealment, fraudulent inducement, invasion of privacy, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, wrongful or bad faith termination, retaliation, negligent hiring, training and supervision, wanton hiring, training and supervision, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

## VII. <u>RELEASE BY QUALIFIED CLAIMANTS</u>

In exchange for the considerations recited in this Agreement, each Qualified Claimant

does hereby and forever release, acquit, discharge and covenant not to sue DEKRA, which includes its attorneys, present and future divisions, affiliates, successors, shareholders, officers, directors, employees, agents, trustees, representatives, administrators, fiduciaries, assigns, subrogees, executors, partners, parents, d/b/a's, and subsidiaries for any and all wage and hour and compensation claims, including but not limited to, DEKRA's alleged failure to pay overtime and/or off-the-clock work and/or failure to pay proper wages/bonus/commission (based upon any legal or equitable theory, whether contractual, common law, statutory, federal, state, municipal or otherwise) for work performed in any position, including but not limited to, as a Lane Manager and/or Station Manager and/or Inspector from the earliest date of the Qualified Claimant's employment (including any employment with any subsidiaries, parents, d/b/a's, related entities, predecessors, or company that were acquired by DEKRA) until the date that each respective Qualified Claimant executes a Consent to Join Form.

## VIII. <u>TERMS OF SETTLEMENT</u>

As a result of the arm's-length negotiations over several sessions beginning in June 2004 and culminating in a tentative agreement in principle on or about January 26, 2005, a settlement of the issues raised in this action was reached which is memorialized in this Agreement.

## IX.   <u>NOTICES</u>

All notices, requests, demands and other communications required or permitted to be given pursuant to this Agreement shall be in writing and shall be delivered personally or mailed, postage prepaid, by first-class mail to the undersigned persons at their respective addresses as set forth herein:

Counsel for Plaintiffs:            Jeremi Young, Esq.
                                   Rasansky Law Firm

2525 McKinnon, Suite 725
Dallas, Texas 75201

Counsel for DEKRA:  Robert F. Friedman, Esq.
Littler Mendelson, P.C.
2001 Ross Avenue, Suite 2600
Dallas, Texas 75201.2931

## X.  **REPRESENTATION BY COUNSEL**

All of the Settling Parties acknowledge that they have been represented by counsel throughout all negotiations which preceded the execution of this Agreement and that this Agreement has been executed with the consent and advice of counsel.

## XI.  **NO ADMISSION OF LIABILITY**

The Settling Parties acknowledge and agree that liability for the actions which are the subject matter of this Agreement is disputed by the Settling Parties.  This Agreement and the settlement are a compromise and shall not be construed as an admission of liability at any time or for any purpose, under any circumstances, by the Settling Parties to this Agreement.  The Settling Parties further acknowledge and agree that this Agreement and the settlement shall not be used to suggest an admission of liability in any dispute the Settling Parties may have now or in the future with respect to any person or entity.  Neither this Agreement nor anything herein, nor any part of the negotiations had in connection herewith, shall constitute evidence with respect to any issue or dispute.

## XII.  **MODIFICATION OF AGREEMENT**

This Agreement may not be modified or amended except in writing, signed by the respective counsel of record for the Settling Parties and as approved by the Court.

## XIII.  **FURTHER COOPERATION**

The Settling Parties and their respective attorneys shall proceed diligently to prepare and

execute all documents, to seek the necessary Court approvals, and to do all things reasonably necessary or convenient to consummate the Agreement and settlement as expeditiously as possible.

## XIV. CONSTRUCTION AND INTERPRETATION

This Agreement constitutes the entire agreement between the Settling Parties. Except as expressly provided herein, this Agreement has not been executed in reliance upon any other oral or written representations or terms, and no such extrinsic oral or written representations or terms shall modify, vary or contradict their terms. In entering into this Agreement, the Settling Parties agree that this Agreement is to be construed according to its terms and may not be varied or contradicted by extrinsic evidence. This Agreement shall be subject to, governed by, construed, enforced and administered in accordance with the laws of the State of Texas, both in its procedural and substantive aspects, and without regard for the principle of conflict of laws, and shall be subject to the continuing jurisdiction of the United States District Court for the Northern District of Texas. This Agreement shall be construed as a whole according to its fair meaning and intent, and not strictly for or against any party, regardless of who drafted or who was principally responsible for drafting this Agreement and/or the written memorandum of understanding, or any specific term or condition thereof. The Named Plaintiffs and DEKRA participated in the negotiation and drafting of this Agreement and had available to them the advice and assistance of independent counsel. As such, neither the Named Plaintiffs, nor DEKRA may claim that any ambiguity in this Agreement should be construed against the other. If the Named Plaintiffs or any Qualified Claimant files suit or brings any other legal proceedings against DEKRA on any claim that is relieved in this Agreement, that Named Plaintiff and/or

Qualified Claimant shall be liable to DEKRA for any attorneys' fees, expert witness fees, and costs of court incurred by DEKRA.

## XV. <u>COUNTERPARTS</u>

This Agreement, any amendments or modifications to it, and any other documents required or contemplated to be executed in order to consummate this Agreement, may be executed in one or more counterparts, each of which shall be deemed an original of this Agreement. All counterparts of any such document together shall constitute one and the same instrument.

## XVI. <u>BINDING EFFECT</u>

This Agreement is binding upon and shall inure to the benefit of the Settling Parties to this Agreement and the Qualified Claimants who opt-in to the lawsuit, as well as their respective attorneys, and past, present and future divisions, predecessors, successors, shareholders, officers, directors, employees, agents, trustee, representatives, administrators, fiduciaries, assigns, subrogees, executors, partners, parents, subsidiaries, and privies. Without limiting the foregoing, this Agreement specifically shall be binding upon the spouses, children, heirs, assigns, successors and offspring of the Named Plaintiffs and all Qualified Claimants.

## XVII. <u>ATTORNEY FEES-COSTS AND EXPENSES</u>

Within fifteen (15) days of the establishment of the Maximum Settlement Fund, as described in Section IV.C.1., above, DEKRA shall pay Plaintiffs' Counsel its attorneys' fees, costs and expenses as set forth in Section IV.C.1(e). Except as otherwise specifically provided herein, the Settling Parties and all Qualified Claimants shall bear responsibility for their own attorney fees, costs and expenses, taxable or otherwise, incurred by them or arising out of this litigation and shall not seek reimbursement thereof from any party to this Agreement.

## XVIII. AUTHORITY OF COUNSEL

Counsel for the Named Plaintiffs, identified below, warrant and represent that they are expressly authorized by the Named Plaintiffs to take all appropriate action required or permitted to be taken pursuant to this Agreement in order to effectuate its terms.  Counsel for DEKRA warrant and represent that they are authorized to take all appropriate action required or permitted to be taken by DEKRA pursuant to this Agreement in order to effectuate its terms.

## XIX. CONTINUING JURISDICTION

The United States District Court for the Northern District of Texas shall have continuing jurisdiction to construe, interpret and enforce the provisions of this Agreement; to supervise the administration and distribution of the resulting settlement funds; and to hear and adjudicate any dispute or litigation arising from this Agreement or the issues of law and facts asserted in the collective action litigation until a final order of dismissal is signed by this Court.

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the date indicated below:

## THE NAMED PLAINTIFFS AND COUNSEL FOR THE NAMED PLAINTIFFS AND POTENTIAL OPT IN PLAINTIFFS:

DATED: _____     By _____
                                            Michael Cone
                                            Named Plaintiff


DATED: _____     By _____
                                            Jason Thomas
                                            Named Plaintiff



DATED: _____     By _____
                                            David Hunter
                                            Named Plaintiff

DATED: _____  By _____
                                       Chris Reed
                                       Named Plaintiff


DATED: _____  By _____
                                       Mike Kutz
                                       Named Plaintiff


DATED: _____  By _____
                                       Ashley Reed
                                       Named Plaintiff


DATED: _____  Rasansky Law Firm
                                 2525 McKinnon, Suite 725
                                 Dallas, Texas 75201


                                 By _____
                                    Jeremi Young

                                 Attorneys for Plaintiffs and Potential Opt In
                                 Plaintiffs

**DEFENDANT DEKRA EMISSION CHECK, INC. AND COUNSEL FOR DEKRA EMISSION CHECK, INC.:**


DATED: _____  DEKRA EMISSION CHECK, INC.


                                 By _____
                                    Scott Rhudy
                                    Vice President, Finance & Operations

DATED: _____  LITTLER MENDELSON, P.C.
                                 2001 Ross Avenue, Suite 2600
                                 Dallas, Texas 75201.2931


                                 By _____
                                    Robert F. Friedman

                                 Attorneys for Defendant DEKRA Emission
                                 Check, Inc.

1.   I understand that this lawsuit is being brought under the federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq.   I hereby consent, agree, and opt-in to become a plaintiff herein.   I agree to be bound by any adjudication of this action by the Court.   I further agree to be bound by the collective action Settlement Agreement agreed to between the plaintiff and DEKRA Emission Check, Inc. ("DEKRA"), which has been recommended by plaintiff's attorneys and approved by the Court as fair, adequate, and reasonable.

2.   I have read the release contained in the Notice of Settlement and in consideration for receiving a monetary payment in this case agree to be bound by the terms of that release and release any claims against DEKRA that I have or may have had under any theory of law (based upon any legal or equitable theory, whether contractual, common law, statutory, federal, state, municipal or otherwise) for DEKRA's alleged failure to pay regular hourly wages and/or overtime to me in any position including but not limited to, as a station manager, lane manager and/or inspector, without regard to precise title (including any alleged failure for working off-the-clock in any position and any failure to properly or accurately compute and pay wages, commission, bonus, and regular hourly pay) from the earliest date of my employment (including any employment with any subsidiaries, parents, d/b/a's, related entities, predecessors, or companies that were acquired by DEKRA) until the date I sign this form.

3.   I hereby designate the Rasansky Law Firm to represent me in this action.   I understand that the Settlement Agreement in this case provides for a fee to these attorneys and that I will not have to pay them any additional compensation for their representation.


_____   _____
Signature                         Date


_____   _____
Print or Type Name                Street Address


_____   _____
Social Security Number            City, State, Zip

(_____)_____  (_____)_____
Home Phone                        Work Phone

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| MICHAEL CONE, On Behalf of Himself and All Others Similarly Situated, | § § § § | |
| Plaintiff, | § | CIVIL ACTION NO. 3-04-CV-1191-B |
| v. | § § | |
| DEKRA EMISSION CHECK, INC., | § § | |
| Defendant. | § § | |

**NOTICE OF SETTLEMENT AND OPPORTUNITY
TO FILE CONSENT TO JOIN FORM**

To:  All persons who were employed by DEKRA Emission Check, Inc. in the United States in the position of Lane Manager and/or Station Manager and/or Inspector for any period of time between January 17, 2003 and March 14, 2005.

Re:  Wage and Hour Settlement regarding DEKRA's alleged failure to pay overtime compensation, off-the-clock work, clocking policies and failure to properly calculate regular hourly rate of pay.

**PLEASE READ THIS NOTICE CAREFULLY
IT MAY AFFECT YOUR LEGAL RIGHTS**

## I. INTRODUCTION

This Notice is being sent to you pursuant to Court Order to inform you that DEKRA Emission Check, Inc. ("DEKRA") has agreed to voluntarily settle a collective action in which the plaintiff asserted that DEKRA violated the Fair Labor Standards Act by failing to pay overtime compensation and working employees off-the-clock to Lane Managers and/or Station Managers and/or Inspectors who were employed in the United States for any time period between January 17, 2003 and March 14, 2005 (the "Relevant Time Period"). You have received this Notice because DEKRA's records indicate that you were employed as a Lane Manager and/or Station Manager and/or Inspector in a DEKRA store located in the United States during the Relevant Time Period. If this information is correct and you timely file a Consent To Join Form,

-1-

Dallas:142995.5 048288.1002

you will be entitled to monetary compensation under the settlement.

THIS NOTICE IS TO INFORM YOU OF:

- THE STATUS OF THE LAWSUIT, INCLUDING YOUR RIGHTS WITH RESPECT TO THE SETTLEMENT OF THE CASE;

- YOUR OPPORTUNITY TO FILE A CONSENT TO JOIN FORM ALLOWING YOU TO PARTICIPATE IN THE SETTLEMENT; AND

- YOUR OPPORTUNITY TO CHALLENGE YOUR DATES OF EMPLOYMENT AS A LANE MANAGER AND/OR STATION MANAGER AND/OR INSPECTOR AT DEKRA THAT ARE LISTED ON YOUR CONSENT TO JOIN FORM, WHICH IS ENCLOSED.

## II. <u>DESCRIPTION OF THE LAWSUIT</u>

On or about September 16, 2004, a former DEKRA employee, Michael Cone, filed a second amended complaint in the United States District Court for the Northern District of Texas, in Dallas, Texas against DEKRA alleging that he and others similarly situated were employed by DEKRA as Lane Managers and/or Station Managers and/or Inspectors, without regard to precise title, and were denied overtime compensation for hours they worked in excess of forty (40) hours per week. Plaintiff alleges that DEKRA violated the federal Fair Labor Standards Act of 1938, 29 U.S.C. § 201 <u>et seq.</u>, by failing to properly pay him and those similarly situated regular hourly wages and overtime compensation for all hours worked in excess of forty (40) per week by working him off-the-clock, by deducting sums from his commission/bonus, and by not properly calculating his regular rate. Plaintiff sought payment of hourly wages and overtime compensation for hours worked in excess of forty (40) per week and any off-the-clock work, plus an award of reasonable attorneys fees, costs and expenses, and such other relief as the Court may deem proper.

DEKRA denied and continues to deny the allegations in Plaintiff's complaint and contends that its wage and hour and pay policies and procedures regarding the payment of overtime wages, hourly wages, and commissions and bonuses to Lane Managers and/or Station Managers and/or Inspectors were proper and in compliance with the law. <u>There has been no finding of any wrongdoing by DEKRA</u>. Nevertheless, to avoid costly, disruptive, and time-consuming litigation, DEKRA negotiated, and without admitting any wrongdoing or liability, agreed to this settlement with the plaintiff. DEKRA is committed to the settlement and will not retaliate against you in any manner if you participate in the settlement by filing a Consent To Join Form.

On _____, 2005, the Court approved the Settlement Agreement, Notice, and

-2-

Consent to Join Form as being a fair and reasonable settlement of the overtime pay and other wage claims raised in the Complaint.   The Plaintiff's Attorneys believe that the settlement is fair, reasonable and in the best interests of the plaintiff and all potential opt in plaintiffs.

## III. <u>TERMS OF THE SETTLEMENT AGREEMENT</u>

DEKRA has agreed to pay $100,000 into a Settlement Fund to resolve all claims raised in this lawsuit. This fund will be used to pay the named Plaintiff, the opt-in plaintiffs who have already opted into this lawsuit, and Qualified Claimants who file timely Consent to Join Forms pursuant to this Notice, to pay the employer's and employee's share of all relevant withholding and payroll taxes, to pay a sum of the administrative costs, expenses, and tax obligations of the fund, to pay Plaintiff's attorneys fees, costs, and expenses in this action, including costs and fees associated with Plaintiff's share of the administration of the settlement described in Section VI, below.

The portion of the Settlement Fund designated to pay the Qualified Claimants is called the Claimant Fund.  If you timely file a Consent To Join Form and you are determined to be a Qualified Claimant, DEKRA has agreed to a pay you a pro rata share of the Claimant Fund based on the number of complete weeks you worked as a Lane Manager and/or Station Manager and/or Inspector relative to the total number of complete weeks worked during the Relevant Time Period of all Qualified Claimants, who file timely Consent to Join Forms in this action. The amount you will receive ultimately depends on how many complete weeks you worked during the Relevant Time Period and how many qualified claimants join this settlement.

**If you wish to participate in the settlement of this case, you must mail the enclosed Consent To Join Form postcard so that it is postmarked on or before _____.** No late Consent To Join Forms will be considered.  If you do not wish to participate in this settlement, you do not need to do anything and you will automatically be excluded from the settlement.

This brief and general summary of the Settlement Agreement in this Notice does not include all of the terms and conditions of the proposed settlement. The only complete statement of the terms of the Settlement Agreement is found in the actual Settlement Agreement, which was approved by the Court on _____. Copies of the Settlement Agreement are available from the Plaintiff's Attorneys.  You may also inspect the Court files at the Office of the Clerk of the United States District Court for the Northern District of Texas, 1100 Commerce St., 13th Floor, Dallas, Texas 75242. **PLEASE DO NOT CALL OR CONTACT THE COURT.**

## IV. <u>OPPORTUNITY TO FILE A CONSENT TO JOIN FORM AND/OR TO CHALLENGE YOUR EMPLOYMENT DATES</u>

**If you wish to participate in the settlement of this case, you must complete and return the enclosed Consent To Join Form postcard so that it is postmarked on or before**

-3-

_____. You should use the enclosed pre-addressed postcard for mailing your claim form to: DEKRA Claims Administrator, P.O. Box _____, **Tallahassee, Florida 32302-_____**. If your Consent To Join Form is not postmarked on or before _____ ___, 2005, you will not be able to participate in the settlement of this case. **No late Consent To Join Forms will be considered.**

The enclosed Computation of Share and Challenge Form sets forth the dates that DEKRA's employee database indicates that you worked as a Lane Manager and/or Station Manager and/or Inspector during the Relevant Time Period of this case. If you wish to participate in the settlement of this case, but do not believe that the dates listed on the Computation of Share and Challenge Form for your employment as a Lane Manager and/or Station Manager and/or Inspector are accurate, and you wish to challenge these dates, you must state under penalty of perjury on the Computation of Share Form the dates you believe you were employed as a Lane Manager and/or Station Manager and/or Inspector and sign and return the Computation of Share and Challenge Form so that it is postmarked on or before _____ ___, 2005. No late Computation of Share and Challenge Forms will be considered.

If you return your Consent To Join Form to the Claims Administrator so that it is postmarked on or before _____ ___, 2005, and you do not challenge the dates of your employment as a Lane Manager and/or Station Manager and/or Inspector during the Relevant Time Period, the Claims Administrator will assume that the dates of employment listed on your Computation of Share and Challenge Form are correct and your settlement payment will be based on these dates.

If you return your Consent to Join Form and your Computation of Share and Challenge Form so that they are postmarked on or before _____ ___, 2005, and indicate that you wish to challenge the dates of your employment as a Lane Manager and/or Station Manager and/or Inspector, the Claims Administrator, in consultation with counsel for the parties, will review your DEKRA personnel records to determine if the dates of employment you claim on your Computation of Share and Challenge Form are correct. Your submission of a Computation of Share and Challenge Form challenging the dates of your employment as a Lane Manager and/or Station Manager and/or Inspector will be your authorization of such a review of your personnel records by the Claims Administrator and counsel for the parties. The Claims Administrator will determine the number of complete weeks you worked as a Lane Manager and/or Station Manager and/or Inspector during the Relevant Time Period after reviewing your DEKRA personnel records showing your dates of employment as a Lane Manager and/or Station Manager and/or Inspector and after consulting with the attorneys for the plaintiffs and DEKRA. Your settlement payment may be increased or decreased as a result of this process. The Claims Administrator's decision regarding the dates you were employed as a Lane Manager and/or Station Manager and/or Inspector will be based upon information contained in your DEKRA personnel records and/or DEKRA's computerized records. The Claims Administrator's decision will be final, binding and unappealable.

-4-

## V. <u>BINDING EFFECT AND RELEASE OF CLAIMS</u>

If you mail your Consent To Join Form so that it is postmarked on or before _____ ____, 2005, you will be bound by the terms of the Settlement Agreement, you will release DEKRA for any and all claims you have or may have had under any theory of law (based upon any legal or equitable theory, whether contractual, common law, statutory, federal, state, municipal, or otherwise) regarding DEKRA's alleged failure to pay you overtime for work performed in any position, including but not limited to, as a lane manager, station manager and/or inspector (including any alleged failure for working off-the-clock in any position and any failure to properly or accurately compute wages, commission, bonus, and regular rate of pay) from the earliest date of your employment (including any employment with any subsidiaries, related entities, or companies that were acquired by DEKRA) until the date that you sign the Consent to Join form. You will be barred from bringing such a claim in the future, and you will receive a monetary award based on the number of complete weeks you worked as a Lane Manager and/or Station Manager and/or Inspector during the Relevant Time Period, less attorneys' fees and costs described in Section VI. If you do not timely return your Consent To Join Form, you will not be bound by this settlement, and you will not receive a share of the settlement.

After all timely submitted Consent to Join Forms are received and all challenges resolved, the Claims Administrator will mail a settlement check to all Named Plaintiffs, and Qualified Claimants who worked in any state as a Lane Manager and/or Station Manager and/or Inspector during the Relevant Time Period and who timely filed a Consent To Join Form. This settlement check will be in full settlement of any and all claims you may have, known or unknown, for DEKRA's alleged failure to pay you overtime, bonus or commission, and/or work off-the-clock for work performed in any position from the earliest date of your employment (including any employment with any subsidiaries, related entities, or companies that were acquired by DEKRA) until the date that you sign the Consent to Join form. State and federal income, Social Security, and Medicare taxes will be withheld from one-half of your settlement check, and you will receive an itemized listing of these deductions and a W-2/1099 and/or other appropriate form setting forth the taxes withheld from your settlement payment. If you timely file a Consent To Join Form, the settlement will be binding on you whether or not you cash the settlement check. If you do not cash the settlement check within 180 days following the issuance of the check, your check will be void and the amount of your settlement will revert to DEKRA as directed by the Court. The parties anticipate that the settlement checks will be distributed by _____, 2005.

## VI. <u>ATTORNEYS' FEES AND COSTS</u>

DEKRA has agreed to pay Plaintiff's attorneys fees and costs. Plaintiff's attorneys fees are $40,000, which represents a forty percent contingency fee. In addition, DEKRA has agreed to pay for costs, and expenses incurred in representing the plaintiff, opt-in plaintiffs, and

Qualified Claimants in this matter from its investigation through court approval and the administration of the Agreement. This payment includes all costs of providing notice to potential qualified claimants, providing legal advice to potential qualified claimants regarding the terms of the Settlement and the release of claims contained therein, for answering questions from potential qualified claimants for administering the claims procedure, for supervising the payment of claims under this Agreement, and for providing representation to the plaintiff, opt-in plaintiffs, and potential qualified claimants in this action.

The Plaintiff's Attorneys are:

> JEREMI YOUNG
> RASANSKY LAW FIRM
> 2525 McKINNON AVE.
> SUITE 725
> DALLAS, TX 75201
> (214) 651-6100 – TELEPHONE
> (214) 651-6150 – FACSIMILE

## VII. NO LEGAL EFFECT IN NOT JOINING THIS SUIT

If you choose not to file a Consent To Join Form, you will not be affected by the settlement of this lawsuit and you will not receive a monetary settlement. Any such relief would be obtainable by you only if you file your own lawsuit within the time provided by law and then you prevail on your claims in that lawsuit.

## VIII. FURTHER INFORMATION AND ADDRESS OF THE PLAINTIFFS' COUNSEL

**PLEASE DO NOT CALL OR CONTACT THE COURT.** If you have any questions about the Settlement Agreement, you may contact the Claims Administrator toll-free at (___) _____, _____, _____, _____or the Plaintiff's Attorneys at the addresses and phone numbers listed above.

## IX. ADDRESS OF DEFENSE COUNSEL

The address for DEKRA's counsel is:

> ROBERT F. FRIEDMAN
> LITTLER MENDELSON P.C.
> 2001 ROSS AVENUE, SUITE 2600
> DALLAS, TEXAS 75201-2931
> 214.880.8100 – TELEPHONE
> 214.880.0181 – FACSIMILE

-6-

## X. OBTAINING COPIES OF THE SETTLEMENT AGREEMENT

You may obtain a copy of the Settlement Agreement from the Plaintiff's Attorneys. Class members or their counsel may also examine the file of this case at the Office of the Clerk of the United States District Court for the Northern District of Texas, located at 1100 Commerce Street, 13th Floor, Dallas, Texas 75242, or at the plaintiff's attorneys' offices at the addresses shown in Section VI above.

## XI. NO RETALIATION OR DISCRIMINATION

DEKRA has voluntarily agreed to the terms of the Settlement Agreement. Both current and former DEKRA employees are eligible to participate in the settlement if they were employed as Lane Manager and/or Station Manager and/or Inspector during the Relevant Time Period. DEKRA is committed to the terms of this settlement. DEKRA will not retaliate or take any adverse action against you for participating in this settlement. Federal law prohibits any such retaliation.

## XII. NO OPINION EXPRESSED AS TO THE MERITS OF THE CASE

On _____ _____, 2005, the Court approved the Settlement Agreement and found that the Agreement was fair and reasonable. However, the Court has expressed no opinion regarding the merits of the plaintiff's claims or DEKRA's liability. **DO NOT WRITE OR CALL THE COURT REGARDING THIS SETTLEMENT.**

## XIII. ADDRESS CHANGES

It is your responsibility to keep the Claims Administrator apprised of your correct address. Please sign and mail any change of address along with your Social Security number, date of birth, former address and new address to: DEKRA Claims Administrator, c/o Settlement Services, Inc., **P. O. Box 1638, Tallahassee, Florida 32302-_____.**


Dated: _____          _____

                                             Clerk
                                             U.S. District Court for the
                                             Northern District of Texas

Dallas:142995.5 048288.1002

**ONE V. DEKRA EMISSION CHECK, I**
c/o Settlement Services, Inc.
P.O. Box _____
Tallahassee, Florida 32302
(888) 567-1410

# COMPUTATION OF SHARE AND CHALLENGE FORM

[fname, lname]
[addr1, addr2]
[city, st, zip]


Social Security number:      [SSN]


Your share of the settlement is based on the number of weeks you were employed anywhere in the United States as a Lane Manager and/or Stations Manager and/or Inspector with DEKRA Emission Check, Inc. ("DEKRA") from January 17, 2003 through March 14, 2005. DEKRA's records show that, within these periods, you worked for DEKRA as Lane Manager and/or Station Manager and/or Inspector during the following specific dates:
_____.

## INSTRUCTIONS

If you wish to participate in the settlement you need to return the enclosed Consent To Join Form to the Claims Administrator so that it is postmarked no later than _____, 2005.

If you wish to participate in the settlement but do not agree with the above employment dates you may challenge the dates by completing the sentence(s) below and returning this form to the Claims Administrator at the above address so that it is postmarked no later than _____, 2005. You must also return the enclosed Consent To Join card to the Claims Administrator by the same date.

Within the period January 17, 2003 and March 14, 2005, I believe I was employed by DEKRA as a Lane Manager and/or Station Manager and/or Inspector from:

Dates:_____, _____ to _____, _____
          month, day            year          month, day            year

*Note: If you claim other dates of employment as a Lane Manager and/or Station Manager and/or Inspector, you hereby authorize the Claims Administrator to review your personnel file and make a determination based on your DEKRA personnel file regarding your correct employment dates. This determination may increase or decrease the amount of your settlement share. All such determinations are final and binding with no opportunity for further appeal.*

I declare under penalty of perjury that the foregoing information supplied by the undersigned is true and correct and that this Computation of Share and Challenge Form was executed on this

day of _____, 2005, in _____, _____ _____ _____
        day              month          city        state    zip


                                        _____
                                                  signature


Dallas:142985.1 048288.1002

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL CONE, On Behalf of Himself and All Others Similarly Situated, | § § § | |
| Plaintiff, | § § | |
| | § | Civil Action No.:3:04-CV 1191-B |
| DEKRA EMISSION CHECK INC., | § § § | |
| Defendant. | § § | |

## DECLARATION OF JEREMI K. YOUNG

I, Jeremi K. Young, declare:

I am over the age of eighteen (18), am of sound mind, and competent to make this Declaration.

I make this Declaration based upon personal knowledge and, if sworn as a witness, could and would testify competently to the facts contained herein.

I acted as lead counsel for Plaintiffs in this matter, and have served as lead

counsel in numerous FLSA collective actions, including the following:

- *Auzenne v. Denton County MHMRC*
  3:03cv1682-D
  U.S. District Court Eastern District of Texas - Sherman

- *Farrell v. Advantage Protector Services*
  H-04-1580

Declaration of Jeremi K. Young                    Page 1

U.S. District Court Southern District of Texas – Houston

- *Humphries v. Stream International*
  3:03cv1682-B
  U.S. District Court Northern District of Texas - Dallas

- *Kelly v. Mieka Corp.*
  3:04cv1169-L
  U.S. District Court Northern District of Texas - Dallas

- *Leach v. Platinum Air Conditioning*
  3:04cv1220-D
  U.S. District Court Northern District of Texas - Dallas

- *Lloyd v. CBR Investigative Co.*
  2:04cv-112
  U.S. District Court Eastern District of Texas - Sherman

- *Mayon v. RaceTrac Petroleum*
  H-04-4237
  U.S. District Court Southern District of Texas - Houston

- *Murillo v. J.C. Penny*
  3:04cv943-L
  U.S. District Court Northern District of Texas - Dallas

- *Sample v. Federal Reserve Bank of Dallas*
  3:04cv1153-H
  U.S. District Court Northern District of Texas - Dallas

Declaration of Jeremi K. Young                    Page 2

- *Schiff v. RaceTrac Petroleum*
  2:03cv402
  U.S. District Court Eastern District of Texas – Sherman

- *Simmons v. Able Security*
  3:04cv0810-H
  U.S. District Court Northern District of Texas - Dallas

- *Touchette v. AT&T Wireless*
  2:030cv432
  U.S. District Court Eastern District of Texas - Marshall

- *Treasure v. Best Storage*
  H-04-4781
  U.S. District Court Southern District of Texas - Houston

- *Wendt v. Vacations to Go*
  H-04-3170
  U.S. District Court Southern District of Texas - Houston

I believe the Settlement Agreement reflects a reasonable compromise over issues that are actually in dispute. The case presents numerous factual and legal issues that posed significant risks for both sides of this litigation. From the Plaintiffs' perspective, some of the more significant factual and legal issues that posed significant litigation risks were:

1. Representation:   Defendant claimed that Michael Cone was not similar to other inspectors working for DEKRA due to his criminal past and because he was unreliability as a worker.

2. Multi-State notice: Defendant operates in Texas and Georgia and has more inspectors working in Georgia than in Texas. Plaintiff filed Plaintiff's Motion for Notice and Expedited Discovery seeking notice for all of DEKRA's inspectors. The court has not ruled on this motion. Plaintiff faces the risk of having his motion denied in its entirety and a greater risk of having the motion denied as to the Georgia employees.

3. Pay plan which circumvents the FLSA:  Plaintiff contends that Defendant's payment system is a plan which circumvents the FLSA. 29 C.F.R. §778.502. This regulation makes illegal "Pay Plans Which Circumvent the Act" and consider them to be a "sham."  It states that "some bonuses, however, although expressed as a percentage of both straight time and overtime wages are in fact a sham.  Such bonuses... usually decrease in amount in direct proportion to increases in the number of hours worked in a week in excess of 40. The hourly rate purportedly paid under such a scheme is artificially low." Defendant pays its employees by reducing their commission in direct proportion to the amount of overtime premium owed to the employee.

Defendant argues that this regulation does not apply. Defendant maintains that overtime was always paid and the commission paid to employees' was a discretionary bonus. The bulk of the classes' damages come from this cause of action. The novelty of the facts in this case increases the risk for both parties.

From the Defendant's perspective, some of the more significant factual and legal issues that posed significant litigation risks were:

1.   Number 3 discussed in the risks for Plaintiffs.

2.   Notice: Defendant faces the risk that notice will be granted to all inspectors working for the Defendant in the last three years. This risk exists in part because of the minimal showing required under the FLSA to obtain notice.

3.   Summary Judgment: Defendant faces the risk that any part of Plaintiff's Motion for Summary Judgment may be granted. First, Plaintiff moved for partial summary judgment on liability grounds alleging that DEKRA failed to pay him at the correct rate of pay pursuant to the FLSA. Second, Plaintiff moved for summary judgment on their cause of action that Defendant's payment system circumvents the FLSA. Third, Plaintiff sought partial summary judgment on liability grounds for Defendant's failure to pay Plaintiffs for all time worked. Finally, Plaintiff moved for summary judgment

on Defendant's affirmative defenses due to Defendant's alleged failure to establish the existence of an element essential for each affirmative defense.

4.      Liquidated Damages: Defendant could face significant liquidated damages should Plaintiff obtain a multi-state opt-in class.

It is my opinion that this settlement represents a reasonable compromise of the factual and legal issues that are in dispute in this case. Counsel for each side possess the unique ability to "assess the potential risks and rewards of litigation, and a presumption of correctness is said to attach to a class settlement reached in arm's length negotiations between experienced capable counsel after meaningful discovery." *Lelsz v. Kavanaagh*, 783 F. Supp. 286, 297 (N.D. Tex. 1991).

There can be no doubt that this case would be procedurally and substantively complex if it proceeds in litigation. The issues concerning class notice and the related issues regarding Mr. Cone's ability to represent the opt-in class and regarding the geographic scope of any notice would be hotly contested even before issues regarding the merits of the case would arise. After lengthy and costly discovery, the court would inevitably be asked to rule on a decertification motion. Depending on the number of opt-in plaintiffs and the procedures adopted by the court for trial, a trial of this matter could continue for weeks. Not only would a lengthy trial consume court resources, but the case would likely be subjected to a lengthy appeal regardless of which party prevailed.

Declaration of Jeremi K. Young          Page 6

The settlement provides for a specific dollar amount for the named Plaintiff and the opt-in Plaintiffs to date, who each responded to written discovery and was subjected to a deposition as part of this case. Michael Cone's damages were calculated based on his pay stubs and his testimony of hours worked off-the-clock. Mr. Cone's pay stubs were used to determine the number of hours paid to Mr. Cone per week and the amount of commission earned. We also used his pay stubs to calculate the amount of overtime owed him under his various theories of recovery. Deposition testimony was used to determine how many hours he worked each week off-the-clock. The other five opt-in Plaintiff's were compensated in a similar fashion.

The common fund is fair and reasonable. There is $37,857.14 allocated to the common fund. Defendant represents that approximately 80 inspectors worked for Defendant at any given time. Defendant has only been in existence since January 17, 2003. Assuming a response of 20% from 80 people would leave $2,366.07 per person. The amount would be adjusted to the length of time an inspector worked for DEKRA. In addition, the amount would increase or decrease depending on how many employees joined the suit. The notice letter would indicate the risks involved depending on how many people joined the suit.

Finally, the attorneys' fees and cost are reasonable. The total recovery in this case was for $100,000. $40,000 is set aside for attorney's fees and $7,000 for actual and

Declaration of Jeremi K. Young       Page 7

anticipated costs. The remaining money was divided between the named plaintiff, the current opt-in plaintiffs, and the common fund in the manner described above.

### Class Counsel's Fees Represent a Reasonable Percentage of the Recovery.

Class counsel will be paid 40% of the entire recovery for attorneys' fees. The Supreme Court has long recognized that an attorney who recovers a common fund for the benefit of persons other than his client is entitled to reasonable attorneys' fees from the fund as a whole. *Trustees v. Greenough,* 105 U.S. 527 (1882); *Central Railroad & Banking of Georgia v. Pettus*, 113 U.S. 116 (1885). The underlying justification for paying a percentage of a common fund is that "unless the cost of litigation is spread to the beneficiaries of the fund they will be unjustly enriched by the attorneys' efforts." *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1265 (D.C. Cir. 1993). By 1984, when the Supreme Court decided *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), the point that "under the 'common fund doctrine'… a reasonable fee is based on the percentage of the fund bestowed on the class" was so well settled that no more than a footnote was needed to make it. *See also, Shaw v. Toshiba America Information Systems, Inc.,* 91 F. Supp 2d 942, 963 (E.D. Tex. 2000). The fees paid to class counsel represent 40% of the total recovery. This amount is within the range of fee awards in common fund cases. *See e.g., General Motors Corp Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 820-22 (3rd Cir. 1995).

Declaration of Jeremi K. Young                    Page 8

**The Attorney's Fees Are Reasonable and Fair Under the Loadstar Method**

The lodestar is computed by multiplying the number of hours reasonably expended by the reasonable hourly rate. *Forbush v. J.C. Penny Co.,* 994 F.2d 1101 (5th Cir. 1993). Then twelve factors are considered so that a court may then apply a multiplier to the lodestar adjusting the lodestar either upward or downward. The twelve factors are:

1.  the time and labor required;

2.  the novelty and difficulty of the issues;

3.  the skill required to perform the legal services properly;

4.  the preclusion of other employment;

5.  the customary fee;

6.  whether the fee is fixed or contingent;

7.  time limitations imposed by the client or the circumstances;

8.  the amount involved and the results obtained;

9.  the experience, reputation and ability of the attorneys;

10. the undesirability of the case;

11. the nature and length of professional relationship with the client; and

12. awards in similar cases.

*Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974).

### a) The Number of Hours Expended is Reasonable.

Lead counsel, Jeremi Young has spent 23.4 hours on this case, to date. Jessica M. Dean has spent 164.3. Angelic Cardoza, the paralegal assigned to this case, has spent 13.5 hours, to date. In total, 201.2 hours have been spent litigating and preparing for this case. Plaintiff has conducted and responded to extensive discovery. Plaintiff has prepared Plaintiff's Motion for Notice and Limited Expedited Discovery and a four part Motion for Summary Judgment. Plaintiff responded to Defendant's denied Motion for Summary Judgment. Plaintiff has also participated in mediation and numerous settlement discussions and has drafted demand letters to facilitate the process. The amount of time spent on this case is reasonable.

### b) The Hourly Rates Charged by Class Counsel are Reasonable.

The hourly rates charged by class counsel in this case are set forth below and are reasonable and customary charges in this legal community.

| NAME | TITLE | RATE |
|------|-------|------|
| Jeremi K. Young | Senior Attorney | $300 |
| Jessica M. Dean | Associate Attorney | $200 |

Declaration of Jeremi K. Young          Page 10

| Angelic Cardoza | Paralegal | $65 |

Class counsel has used reasonable rates in calculating their requested fees and has used rates that are comparable to the market rate. Jeremi K. Young and Jessica M. Dean work in a market shared by very few attorneys in Texas: a contingent-fee practice specializing in plaintiffs' FLSA collective action litigation. Mr. Young is in his sixth year as an attorney and Ms. Dean is in her second. Mr. Young and Ms. Dean's primary focus on a single area of practice permits them to develop a depth of experience and expertise in collective action litigation. The rates are further justified because all work done by Mr. Young and Ms. Dean is done on a contingency fee basis. *See, City of Burlington v. Dague*, 505 U.S. 557 (1992). In *Dauge,* the Supreme Court stated that attorneys who regularly are willing to undertake contingent cases can command a higher rate to compensate the risk of loss. *Id.* at 562. In addition, contingent cases taken in the FLSA collective action context require a large commitment of time and financial resources. Based on these factors the rates charged by class counsel are reasonable.

    **c)**    **The Twelve (12) Johnson Factors:**

        **1)**    **The time and labor required.** Parties were not able to reach settlement until extensive work was completed. For instance, Plaintiff filed his Motion for Notice and Expedited Discovery, Plaintiff responded to Defendant's Motion for

Summary Judgment, which was denied, Plaintiff engaged in extensive written and oral discovery, and Plaintiff filed a four part Motion for Summary Judgment.

**2)** **The novelty and difficulty of issues**: The majority of the law relating to this case is not novel.  However, Plaintiffs allegation that Defendant had a plan which circumvented the act under 29 C.F.R. §778.502 addressed novel issues.

**3)** **The skill required to perform the legal services properly:** Litigating a collective action requires a high level of specialized skill including case management skills not required in the typical case.

**4)** **The preclusion of other employment:**    The Rasansky Law Firm is a small law firm, employing five attorneys.  It handles both collective and individual FLSA cases.  The commitment of time and staff in a collective action affects the ability of class counsel to take on new business while a case such as this is pending on its docket.

**5)** **The customary fee:** This factor is discussed above regarding the reasonableness of the rates utilized by class counsel.

**6)** **Whether the fee is fixed or contingent:** Michael Cone, the named Plaintiff, executed a contract with the class counsel which provided for a contingent fee.

Declaration of Jeremi K. Young                    Page 12

7)      **Time limitations imposed by the client or the circumstances:**
Neither the client or the circumstances imposed any special time limitations with regard
to this matter.

8)      **The amount involved and the result obtained:** "The most critical
factor in determining reasonableness of fee awards is the degree of success obtained."
*Dugas* v. *Jefferson County, Texas,* 19967 U.S. Dist. LEXIS 21608 (E.D. Tex. 1996)
*aff'd,* 127 F.3d 33 (5th Cir. 1997)(quoting *Farrar v. Hoby*, 506 U.S. 103, 114)).   The
results obtained in this case were excellent.  Most significantly, the class will include all
persons employed by Defendant in the positions of lane manager, station manager, or
inspector, regardless of precise title.  This is the exact scope of class that the Plaintiff
requested in Plaintiff's Motion for Notice and Expedited Discovery.   Moreover, the
common fund will not be reduced to pay cost or attorneys' fees.

9)      **The experience, ability, and reputation of the attorneys:**  The
Plaintiff and the class in this case were represented by attorneys with significant
experience and ability to litigate FLSA collective actions.

10)     **The undesirability of this case:**   This factor does not pertain to
this case.

11)     **The nature and length of the professional relationship of the
client:** This factor does not pertain to this case.

Declaration of Jeremi K. Young                    Page 13

12)   **Awards in similar cases:**   This factor is discussed regarding percentages of recoveries in common fund cases and the reasonableness of the rates utilized by class counsel.

An analysis of the *Johnson* factors establish the reasonableness of the fee award sought here.  Indeed the application of the *Johnson* factors would justify a multiplier in this case.  Based on just the hours worked and the hourly fee, class counsel is entitled to $40,625 at this point.  Moreover, additional expense, time, and effort will be required to administer the settlement.  Even without a multiplier, class counsel downwardly adjusted their fees in order to reach settlement in this case.  Under the fee doctrines governing this jurisdiction, the arrangement for costs, expenses, and fee is fair and reasonable.

**F.   The Notice is Accurate and is Not Misleading.**

The notice to be distributed to the class members is an accurate summary of the settlement and contains detailed and accurate instructions for opt-in class members to participate in the settlement should they chose to do so.  It is not misleading in any way.  As such, this court should approve the notice, as well as the underlying settlement agreement.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this _14_ day of March, 2005.

Jeremi K. Young

Declaration of Jeremi K. Young                    Page 14